**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

TERRY MADDEN, DOUG WORTMAN,                                          PLAINTIFFS
and REBECCA O'BAR, individually and on behalf
of others similarly situated

v.                                        No. 4:10CV01162 JLH

LUMBER ONE HOME CENTER, INC.                                          DEFENDANTS

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Terry Madden, Doug Wortman, and Rebecca O'Bar brought this action against Lumber One

Home Center, Inc., seeking overtime compensation pursuant to the Fair Labor Standards Act. *See*

29 U.S.C. § 207(a)(1). Each of the plaintiffs was employed to work at a Lumber One store that

opened on November 16, 2008, in Mayflower, Arkansas. Each of the plaintiffs began work before

the store opened. Each of the plaintiffs worked more than forty hours per week. Each of the

plaintiffs was paid on a salary basis because Lumber One contended that each of them was exempt

from the FLSA's overtime requirements pursuant to the exemption for executive employees. *See* 29

U.S.C. § 213(a)(1).

The case was tried to a jury on March 12 and 13, 2012. At the close of the evidence, the

plaintiffs made a timely motion for judgment as a matter of law pursuant to Rule 50 of the Federal

Rules of Evidence, arguing that Lumber One had failed as a matter of law to submit evidence

sufficient for a reasonable jury to find that the plaintiffs were executive employees. The Court took

that motion under advisement. The jury returned a verdict against each plaintiff, finding that Lumber

One had met its burden of proving that each one of them was an executive employee. Because it

could not reasonably be concluded that Lumber One failed to meet its burden of proving that each

of the plaintiffs was an executive employee, the Court then granted the plaintiffs' motion for judgment as a matter of law.

The parties have now stipulated that the Court may act as the finder of fact with respect to wages and may base its findings on the record developed at the trial in this case.

The disputed issues relate to the number of hours of overtime worked by each of the plaintiffs, whether the method of calculating damages should be the fluctuating workweek method, and whether the plaintiffs should be awarded liquidated damages. The legal conclusions that govern these issues, as well as a number of findings of fact that must be made by the Court, are common to all of the plaintiffs. Therefore, the Court will address the legal issues and make the factual findings that will apply to all of the defendants before addressing the hours worked by each defendant and the calculation of damages for each defendant.

## I.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW
### RELEVANT TO ALL THREE PLAINTIFFS

**A.    HOURS WORKED**

In *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 881-82 (8th Cir. 2011), the Eighth Circuit explained:

> "[A]n employee who brings suit . . . for unpaid minimum wages . . . has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946), superceded by statute on other grounds, Portal-to-Portal Act of 1947, Pub. L. No. 49-52, § 5, 61 Stat. 84, 87 (May 14, 1947) (codified at 29 U.S.C. § 216(b)). Noting that it is the employer's duty to keep employment records, the Court in *Mt. Clemens* stated that as long as "the employer has kept proper and accurate records [,] the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises." *Id*. at 687, 66 S. Ct. 1187. Penalizing the employee in that situation

would only encourage employers to fail to keep proper records, so the Court held "that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88, 66 S. Ct. 1187. By contrast, an exemption under the FLSA is an affirmative defense, and the employer bears the burden of proof to establish that an exemption applies. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97, 94 S. Ct. 2223, 41 L. Ed. 2d 1 (1974).

At trial, it was undisputed that each of the plaintiffs worked more than forty hours per week during weeks for which overtime was not paid. Consequently, each of the plaintiffs met the burden of proving work was performed without proper compensation.

Because the employer has the duty to keep employment records, the burden is on the employer to produce records showing the number of hours worked by each plaintiff. Lumber One did not maintain records of the hours actually worked by any of the plaintiffs because it deemed them to be executive employees. At trial, Lumber One introduced into evidence work schedules prepared by an employee named Chris Harris, who did not testify. Those schedules show that the plaintiffs were scheduled to work eight hours per day Monday through Friday and on alternate Saturdays. Those schedules and the testimony of the plaintiffs sometimes conflict as to which days that they worked. According to Lumber One's owner, John Morton, these work schedules were posted in a breakroom. All three of the plaintiffs denied seeing the schedules in the breakroom and all three denied that those schedules represent accurate records of the hours that they worked.

Despite those schedules, the preponderance of the evidence established that each of the plaintiffs worked forty-five hours per week prior to the store opening and an additional eight hours on alternating Saturdays after the store opened. The most credible testimony on this point was that

of Terry Madden and John Morton.  Madden testified that when he was hired he was told that he

would work forty-five hours per week and eight hours every other Saturday.  Tr. 90, 101.[1]  Similarly,

Morton testified as follows:

> Q.      In fact, I believe I heard you testify that as to all three of the employees, the understanding was 45 hours a week Monday through Friday; is that correct?
>
> A.      Yeah.
>
> Q.      And then every other Saturday after the store opened.
>
> A.      Yes.  That was common for every salaried employee.
>
> Q.      Okay.  So the estimates that my plaintiffs testified about earlier, where it was five hours a week on the weeks they did not work on Saturdays and somewhere around 13 on the weeks they were on Saturdays, would you essentially agree with those estimates?
>
> A.      Yes, I would, with the exception of that they didn't put in holidays, birthdays, vacations.

Tr. 243-44.  Thus, based on the testimony of Madden and Morton, which the Court accepts as true,

all three of the plaintiffs worked forty-five hours per week Monday through Friday and, after the store

opened, on alternate Saturdays.  In addition, Amy Quimby, the Lumber One office manager, stated

in a letter, which was read during her testimony, that employees were not assigned to work every

other Saturday until approximately a month leading up to the store opening.  Tr. 85-86.  Her

testimony on that point was corroborated by Rebecca O'Bar, who testified that employees began to

work on Saturdays approximately two weeks before the store opened.  Tr. 137, 145.

---

[1] The trial transcript appears in the record as Documents #77 and #78.  Though the transcript is filed as two documents in CM/ECF, the court reporter has paginated the transcript in a continuous sequence.  The citations in this Opinion and Order are to the court reporter's pagination.

At trial, the plaintiffs offered charts showing the hours that they claimed to have worked, but they admitted that their charts failed to take into account holidays, birthdays, vacations, and the like. They have now submitted revised charts that take into account the fact that they did not work on holidays, birthdays, vacations, and the like. Except as noted below with respect to the individual plaintiffs, those charts accurately reflect what was proven by the preponderance of the evidence as to the hours that the plaintiffs worked.

**B.      THE METHOD OF CALCULATING DAMAGES**

The next issue is how to calculate the damages. The Fair Labor Standards Act provides that a nonexempt employee must be paid "at a rate not less than one and one-half times the regular rate at which he is employed" for all hours in excess of forty hours per week. 29 U.S.C. § 207(a)(1). The fluctuating workweek method calculates the hourly rate of pay for an employee who is paid a salary and who works varying hours per week by dividing the weekly wage by the total number of hours that the employee worked in a given week rather than by forty. *See Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 666 (7th Cir. 2010). This calculation assumes that the salary is intended to compensate the employee for all hours worked rather than merely for forty hours. The fluctuating workweek method thus reduces damages that an FLSA plaintiff may recover in two respects. First, the regular rate of pay is reduced inasmuch as the hourly rate is determined by dividing the salary by total hours worked rather than by forty. *Id.* at 672. Second, assuming that the fixed weekly wage is compensation for all hours worked, including hours in excess of forty per week, the overtime rate is reduced from 150% of the regular rate to 50% of the regular rate. *Id.*

The fluctuating workweek method of calculating overtime derives from *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 62 S. Ct. 1216, 86 L. Ed. 2d 1682 (1942), *superseded on other*

*grounds by statute as stated in Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128 n.22, 105

S. Ct. 613, 625 n.22, 83 L. Ed. 2d 523 (1985).  Subsequent to the decision in *Missel*, the Department

of Labor incorporated the fluctuating workweek method into an interpretive bulletin.  *See* 29 C.F.R.

§ 778.114.  According to that interpretive bulletin, an employer can comply with the overtime

requirements of 29 U.S.C. § 207(a) by paying overtime pursuant to the fluctuating workweek method

provided that the conditions specified in that interpretive bulletin are met.

The Eighth Circuit has not ruled on whether the Supreme Court's decision in *Missel* or

29 C.F.R. § 778.114 constitutes the correct source of authority for deciding whether the fluctuating

workweek method applies to a claim for damages.  In *Urnikis-Negro*, the Seventh Circuit explained

that *Missel*, not 29 C.F.R. § 778.114, is the correct source of authority for determining when the

fluctuating workweek method applies to a claim for damages.  *See Urnikis-Negro*, 616 F.3d at 675-

81.  This Court and other district courts in the Eighth Circuit have followed the Seventh Circuit's

analysis in *Urnikis-Negro*.  *See Smith v. Frac Tech Servs., LLC*, No. 4:09CV00679, 2011 WL 96868,

at *35-36 (E.D. Ark. Jan. 11, 2011); *Pressler v. FTS USA, LLC*, No. 4:09CV00676, 2010 WL

5105135 (E.D. Ark. Dec. 9, 2010); *Ahle v. Veracity Research Co.*, No. 09-0042, 2010 WL 3463513,

at *18-19 (D. Minn. Aug. 25, 2010) ("The Seventh Circuit's decision methodically analyzes the

competing arguments . . . .  The Court adopts the reasoning set forth in *Urnikis-Negro*.").[2]  Under

---

[2] Other circuit courts also have held that the fluctuating workweek method is the appropriate
method for calculating damages in misclassification cases.  *Rodriguez v. Farm Stores Groc., Inc.*, 518
F.3d 1259, 1268-69 (11th Cir. 2008) (holding that to calculate damages in a miscalculation case, the
court should divide the salary by the number of hours the salary was intended to cover); *Valerio v.
Putman Assocs., Inc.*, 173 F.3d 35, 39-40 (1st Cir. 1999) (applying the fluctuating workweek method
to the damage claim of an employee misclassified as an administrative employee); *Blackmon v.
Brookshire Groc. Co.*, 835 F.2d 1135, 1138-39 (5th Cir. 1988) (applying the fluctuating workweek
method to the damage claims of employees misclassified as executive or administrative); *Crawford
Prod. Co. v. Bearden*, 272 F.2d 100, 105 (10th Cir. 1959) (holding that the salary was to cover all

this analysis, the factual issue with respect to whether the plaintiffs' damages should be calculated

using the fluctuating workweek method is whether the employer and employee agreed that the salary

was intended to compensate for all hours worked or only for forty hours per week. *See Urnikis-*

*Negro*, 616 F.3d at 681.

Morton testified that when he interviewed each plaintiff he asked what salary that plaintiff was

looking to receive.  He then agreed on that salary and discussed with each of them the expected

hours.  In each instance, according to him, he explained that the plaintiff would be expected to work

forty-five hours on Monday through Friday until the store opened, and then the schedule would be

the same forty-five hours per week plus eight hours on alternate Saturdays.  Madden confirmed

Morton's testimony, which means that he has conceded that the fluctuating workweek method of

calculating damages applies to him.  O'Bar and Wortman, however, testified that they believed that

their salary was intended only to cover forty hours per week.  Even so, immediately after their

employment began, they worked more than forty hours per week and continued to work more than

forty hours per week in return for the salary that had been agreed upon at the beginning. *See id.* at

680-81 (explaining that acceptance of salary while working substantially more than forty hours per

week can be evidence that the parties intended the salary to cover all hours worked).  Neither O'Bar

nor Wortman ever complained to Morton about the lack of overtime pay.  Considering Morton's

testimony, Madden's testimony, the course of dealing between the parties, and the demeanor of the

witnesses, the preponderance of the evidence demonstrates that the parties agreed that the salary for

---

hours actually worked even though the work week fluctuated, so the fluctuating workweek method
calculating overtime should apply).

each plaintiff was intended to compensate that plaintiff for all hours worked.  Therefore, the

fluctuating workweek method will be applied to calculate the damages for each of the plaintiffs.

**C.     LIQUIDATED DAMAGES**

The final legal issue is whether to award liquidated damages.  Under the FLSA, "[a]n award

of liquidated damages . . . is mandatory unless the employer can show good faith and reasonable

grounds for believing that it was not in violation of the FLSA."  *Braswell v. City of El Dorado, Ark.*,

187 F.3d 954, 957 (8th Cir. 1999); *see* 29 U.S.C. § 216(b); *Jarrett v. ERC Props., Inc.*, 211 F.3d

1078, 1084 (8th Cir. 2000).  The good-faith defense requires the employer to establish "an honest

intention to ascertain and follow the dictates of the FLSA."  *Chao v. Barbeque Ventures, LLC*, 547

F.3d 938, 942 (8th Cir. 2008) (quoting *Hultgren v. Cnty. of Lancaster, Neb.*, 913 F.2d 498, 509 (8th

Cir. 1990)).  "To carry his burden, a defendant employer must show that he took affirmative steps

to ascertain the Act's requirements, but nonetheless, violated its provisions."  *Id.* (quoting *Martin v.*

*Cooper Elec. Supply Co.*, 940 F.2d 896, 908 (3d Cir. 1991)).  The employer's burden is "a difficult

one, with double damages being the norm and single damages being the exception."  *Id.* at 941.

Morton testified:

Q.      So what did you do to determine that it was legally permissible for you to
place someone on salary?

A.      They were to be a lead person, a supervisor.

Q.      So it was your subjective determination that they were to be a supervisor, is
what you relied on to place someone on salary; is that correct?

A.      Correct.

Q.      Did you look at the requirements of the law for someone to qualify as an
exempt executive employee?

A.      Did I read the law?  No, ma'am, I didn't.

Q.      Do you do any investigation whatsoever into what job duties someone had to perform in order to be paid salary under the executive exemption?

A.      No, ma'am, I didn't.

Q.      None.  It was just your –

A.      I did not read it, no.

Q.      So it was just your understanding that because you called them a supervisor and put them on salary, that was okay.

A.      They supervised people.  Yes, ma'am.  To say I went and read the regs on it and knew exactly what the regulations said, no, ma'am, I did not go read those.  I assumed the knowledge I had was good.

Q.      So where did you get your knowledge then?

A.      Just from being in business and employing -- I've been employing people for, you know, 35 years.

Q.      Okay.  Do you have an HR department who ensures compliance with legal areas?

A.      We have particular people that are assigned to watch HR, yes, but not if -- they have many other responsibilities.  Amy was the person that as we're moving into Stuttgart or from Stuttgart, Amy was the person that had handled that in years past.

Q.      So help me understand.  Did Amy -- did you and Amy have a conversation about this is the law and these are the people who can permissibly be paid a salary and don't have to be paid overtime?

A.      No, ma'am, we did not have that conversation.  We were just doing what we've done for the last 25 years.

Tr. 228-29.

As this testimony shows, there was no reasonable basis for Morton's conclusion that the three plaintiffs were exempt from the overtime requirements of the Fair Labor Standards Act by virtue of the executive exemption.  Even though he had been in business a number of years, Morton did nothing to confirm or disconfirm his beliefs as to what qualifies as an executive under the Fair Labor

Standards Act. He did not read the regulations, nor did he consult with someone who had read them. Furthermore, the Court concluded in granting plaintiffs' motion for judgment as a matter of law that the jury could not reasonably conclude that these plaintiffs were executives as that term is defined under the Fair Labor Standards Act. Document #76. Likewise, Morton could not reasonably conclude that the plaintiffs were exempt. Therefore, liquidated damages will be awarded.

## II.

## FINDINGS OF FACT AS TO EACH PLAINTIFF

### A.   TERRY MADDEN

In an attachment to the plaintiffs' brief on damages, Madden has submitted a revised chart with his estimate of the hours that he worked each week, his regular rate of pay, his overtime hours, the rate of pay for his overtime hours, and, based on that information, the calculation of his damage claim.[3] The only challenges that Lumber One makes to Madden's chart relate to some of the weeks included on the chart.

First, Lumber One contends that the statute of limitations bars some of Madden's overtime claims. Madden's chart includes overtime from May 2008, when he was first employed, through May 22, 2010. The complaint was filed on August 23, 2010. The statute of limitations under the FLSA is two years, unless the employer willfully violated the Act, in which case the statute is three years. 29 U.S.C. § 255. The court has already found that Lumber One did not violate the FLSA willfully. Document #76 at 5-6. Therefore, the period of limitations is two years, which means that Madden cannot recover for overtime that he worked before August 23, 2008.

---

[3] *See* Document #88-1. The chart for Madden will not be reproduced here.

Second, Madden's chart claims overtime for the week of May 16, but Lumber One has shown that he was reclassified beginning that week as an hourly employee and so was paid overtime for that week.

Madden claims overtime in the amount of $4,233.94, which includes a claim for $387.70 for overtime before August 24, 2008, and $68.64 for overtime during the week of May 16, 2010.  When both amounts are deducted from his claim, the amount Lumber One owes Madden for overtime equals $3,777.60.  Pursuant to 29 U.S.C. § 216(b), an additional equal amount is added as liquidated damages, so Madden's total damages equal $7,555.20.

**B.     REBECCA O'BAR**

O'Bar was paid $1,153.85 every two weeks, which comes to $576.93 per week.  For weeks when O'Bar worked fifty-three hours, her regular rate is determined by dividing $576.93 by 53, which yields a regular rate of $10.89 per hour.  One-half of that amount ($5.45) is the additional amount owed to her for each of the thirteen overtime hours.  For weeks when O'Bar worked forty-five hours, her regular rate is calculated by dividing $576.93 by 45, which yields a regular rate of $12.82 per hour.  One-half of that ($6.41) is the additional amount owed to her for each of the five overtime hours.

The following chart[4] reflects O'Bar's damages, using the fluctuating workweek method and applying it to the Court's findings as to the hours that she worked.

---

[4] The revised chart that O'Bar submitted after trial is Document #88-2.  O'Bar's revised chart claims no overtime before November 16, 2008, and none after February 21, 2009.  O'Bar was reclassified as an hourly employee, and she quit on February 25, 2009.

| Date of Employment | Rate of Pay | Number of Reg. Hrs | Number of OT Hrs | Rate of Pay for OT Hrs | Damages |
|---|---|---|---|---|---|
| 11/16/2008-11/22/2008 | $10.89 | 40 | 13 | $5.45 | $70.85 |
| 11/30/2008-12/06/2008 | $10.89 | 40 | 13 | $5.45 | $70.85 |
| 12/07/2008-12/13/2008 | $12.82 | 40 | 5 | $6.41 | $32.05 |
| 12/14/2008-12/20/2008 | $10.89 | 40 | 13 | $5.45 | $70.85 |
| 12/28/2008-01/03/2009 | $12.81 | 40 | 5 | $6.41 | $32.05 |
| 01/04/2009-01/10/2009 | $12.82 | 40 | 5 | $6.41 | $32.05 |
| 01/11/2009-01/17/2009 | $10.89 | 40 | 13 | $5.45 | $70.85 |
| 01/18/2009-01/24/2009 | $12.81 | 40 | 5 | $6.41 | $32.05 |
| 01/25/2009-01/31/2009 | $10.89 | 40 | 13 | $5.45 | $70.85 |
| 02/01/2009-02/07/2009 | $12.81 | 40 | 5 | $6.41 | $32.05 |
| 02/08/2009-02/14/2009 | $10.89 | 40 | 13 | $5.45 | $70.85 |
| 02/15/2009-02/21/2009 | $12.81 | 40 | 5 | $6.41 | $32.05 |
|  |  |  |  |  | $617.40 |

This calculation results in overtime pay owed to O'Bar in the amount of $617.40.  Pursuant to

29 U.S.C. § 216(b), an additional equal amount is added as liquidated damages.  Therefore, O'Bar's

total damages are $1,234.80.

## C.    DOUG WORTMAN

Wortman's damages have been calculated in a manner similar to that of O'Bar.[5]  Wortman

was hired in September of 2008 and was terminated in early March of 2009.  During that period, he

earned $600 per week.  Tr. 155.  He was re-employed at Lumber One on June 15, 2009, at the rate

---

[5] Wortman's revised chart is Document #88-3.

of $550 per week. Tr. 156.[6] He claims no overtime after August 1, 2009.[7] Unlike the other two plaintiffs, Wortman testified that his overtime alternated between ten hours per week and twenty hours per week, which is to say that he purportedly worked thirty hours of overtime in each two-week period, in contrast to the eighteen hours of overtime in each two-week period to which Madden and Morton testified. The Court does not believe Wortman's testimony on this point. As noted, Morton conceded that each plaintiff worked forty-five hours per week, Monday through Friday, and on alternate Saturdays after the store opened, and the Court finds by a preponderance of the evidence that Wortman worked those hours, *i.e.*, forty-five hours per week, Monday through Friday, plus eight hours on Saturday on alternate weeks after the store opened. It was undisputed that Wortman also worked three Sundays in October leading up to the store opening. Tr. 147, 218. And, based on the testimony of Quimby and O'Bar, employees, including Wortman, began working on alternate Saturdays approximately two weeks before the store opened on November 16, 2008.

During Wortman's first stint with Lumber One, for weeks when he worked forty-eight hours,[8] his regular rate of pay is determined by dividing $600 by 48, which yields a regular rate of pay of $12.50. One-half of that amount ($6.25) is the additional amount owed to him for each of the eight hours of overtime. For the weeks when Wortman worked forty-five hours, his regular rate of pay is determined by dividing $600 by 45, which yields a regular rate of pay of $13.33. One half of that amount ($6.67) is the additional amount owed to him for each of the five hours of overtime. For the

---

[6] The transcript says that Wortman started to make $1,100 every two weeks on July 1, 2009, but the charts of both parties show that he started on June 15, 2009, so the Court concludes that July 1 was the date that he received his first salary payment in that amount.

[7] Wortman's employment at Lumber One terminated in September of 2009. Tr. 163.

[8] These are the three weeks in October when he worked on Sundays.

weeks when Wortman worked fifty-three hours, his regular rate of pay is determined by dividing $600 by 53, which yields a regular rate of pay of $11.32. One-half of that amount ($5.66) is the additional amount owed to him for each of the thirteen overtime hours. For the weeks when Wortman worked 42 hours, his regular rate of pay is determined by dividing $600 by 42, which yields a regular rate of pay of $14.29. One-half of that amount ($7.15) is the amount owed to him for each of the two overtime hours. The formula remains the same, though the rates change, for the time during which Wortman worked at a lesser salary in June and July of 2009.

The following chart reflects Wortman's damages, using the fluctuating workweek method and applying it to the Court's findings for the hours that he worked:

| Date of Employment | Rate of Pay | Number of Reg. Hrs | Number of OT Hrs | Rate of Pay for OT Hrs | Damages |
|---|---|---|---|---|---|
| 10/12/2008-10/18/2008 | $12.50 | 40 | 8 | $6.25 | $50.00 |
| 10/19/2008-10/25/2008 | $12.50 | 40 | 8 | $6.25 | $50.00 |
| 10/26/2008-11/01/2008 | $12.50 | 40 | 8 | $6.25 | $50.00 |
| 11/02/2008-11/08/2008 | $13.33 | 40 | 5 | $6.67 | $33.35 |
| 11/09/2008-11/15/2008 | $11.32 | 40 | 13 | $5.66 | $73.58 |
| 11/16/2008-11/22/2008 | $13.33 | 40 | 5 | $6.67 | $33.35 |
| 11/23/2008-11/29/2008 | $14.29 | 40 | 2 | $7.15 | $14.30 |
| 11/30/2008-12/06/2008 | $13.33 | 40 | 5 | $6.67 | $33.35 |
| 12/07/2008-12/13/2008 | $11.32 | 40 | 13 | $5.66 | $73.58 |
| 12/14/2008-12/20/2008 | $13.33 | 40 | 5 | $6.67 | $33.35 |
| 12/21/2008-12/27/2008 | $14.29 | 40 | 2 | $7.15 | $14.30 |
| 01/04/2009-01/10/2009 | $11.32 | 40 | 13 | $5.66 | $73.58 |
| 01/11/2009-01/17/2009 | $13.33 | 40 | 5 | $6.67 | $33.35 |
| 01/18/2009-01/24/2009 | $11.32 | 40 | 13 | $5.66 | $73.58 |
| 01/25/2009-01/31/2009 | $13.33 | 40 | 5 | $6.67 | $33.35 |

| 02/01/2009-02/07/2009 | $11.32 | 40 | 13 | $5.66 | $73.58 |
|---|---|---|---|---|---|
| 02/08/2009-02/14/2009 | $13.33 | 40 | 5 | $6.67 | $33.35 |
| 02/15/2009-02/21/2009 | $11.32 | 40 | 13 | $5.66 | $73.58 |
| 02/22/2009-02/28/2009 | $13.33 | 40 | 5 | $6.67 | $33.35 |
| 03/01/2009-03/07/2009 | $11.32 | 40 | 13 | $5.66 | $73.58 |
| 06/15/2009-06/20/2009 | $12.22 | 40 | 5 | $6.11 | $30.55 |
| 06/21/2009-06/27/2009 | $10.38 | 40 | 13 | $5.19 | $67.47 |
| 07/05/2009-07/11/2009 | $13.10 | 40 | 2 | $6.55 | $13.10 |
| 07/12/2009-07/18/2009 | $12.22 | 40 | 5 | $6.11 | $30.55 |
| 07/19/2009-07/25/2009 | $10.38 | 40 | 13 | $5.19 | $67.47 |
|  |  |  |  |  | $1,169.60 |

This calculation results in overtime pay owed to Wortman in the amount of $1,169.60.  Pursuant to 29 U.S.C. § 216(b), an additional equal amount is added as liquidated damages.  Therefore, Wortman's total damages are $2,339.20.

## CONCLUSION

Judgment will be entered in favor of Terry Madden against Lumber One in the amount of $7,555.20.  Judgment will be entered in favor of Rebecca O'Bar against Lumber One in the amount of $1,234.80.  Judgment will be entered in favor of Doug Wortman against Lumber One in the amount of $2,339.20.

IT IS SO ORDERED this 5th day of March, 2013.

J. Leon Holmes

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE