**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

TERRY MADDEN, DOUG WORTMAN, and                                                    PLAINTIFFS
REBECCA O'BAR

v.                                       No. 4:10CV01162 JLH

LUMBER ONE HOME CENTER, INC.                                                         DEFENDANT

## OPINION AND ORDER

Following the entry of final judgment against Lumber One Home Center, Inc., plaintiffs Terry Madden, Doug Wortman, and Rebecca O'Bar filed a timely motion for attorneys' fees and costs pursuant to the Fair Labor Standards Act. *See* 29 U.S.C. § 216(b). In support, the plaintiffs submitted an affidavit from one of their lawyers, itemizations of the time spent on the case and the costs expended, and two affidavits from lawyers familiar with the Arkansas and FLSA legal markets. Lumber One has opposed the motion, and the plaintiffs have replied. For the following reasons, the Court grants the motion in part and denies it in part.

### I.

Lumber One sells lumber, building supplies, and hardware at a store in Mayflower, Arkansas. The plaintiffs are three former salaried employees of Lumber One's Mayflower store who alleged that they and others had been underpaid due to Lumber One's improper categorization of them as exempt from FLSA overtime pay requirements. Under the FLSA, employers must pay employees at least time-and-a-half for all hours worked over forty hours per week. *See* 29 U.S.C. § 207(a)(1). Exempt from this requirement is "any employee employed in a bona fide executive . . . capacity." *Id.* § 213(a)(1). Lumber One contended that each of the plaintiffs was an executive employee and thus exempt. To be exempt from FLSA overtime requirements as an executive, an employee must: (1) be compensated not less than $455 per week; (2) have, as a primary duty, management of the

enterprise in which he is employed; (3) customarily and regularly direct the work of two or more other employees; and (4) have the authority to hire or fire, or have his suggestions as to hiring and firing be given particular weight. *See* 29 C.F.R. § 541.100 (2010); Document #62, at 8 (jury instructions).

Prior to trial, the Court denied the plaintiffs' motion to certify an FLSA collective action and their motion for partial summary judgment on liability. Lumber One also moved for partial summary judgment, arguing that the proper method for calculating back pay in an FLSA misclassification case is the fluctuating workweek method.[1] The Court, relying on its previous decision in *Smith v. Frac Tech Services, LLC*, No. 4:09CV00679, 2011 WL 96868, at *34-36 (E.D. Ark. Jan. 11, 2011), affirmed the propriety of using this method when a salary is intended to cover all of the hours a person works, but denied the motion because a fact issue existed as to whether the plaintiffs' salaries were intended to cover all of their hours worked, or just forty hours.

The case was tried to a jury on March 12 and 13, 2012. The jury returned a verdict against the plaintiffs, finding that Lumber One had met its burden of proving that each of the plaintiffs was an executive employee. After trial, the plaintiffs renewed the motion for judgment as a matter of law that they had timely filed at the close of evidence pursuant to Rule 50 of the Federal Rules of Civil Procedure. The Court granted this motion on the primary issue, finding that, while Lumber One had

---

[1] The fluctuating workweek method "calculates the hourly rate of pay for an employee who is paid a salary and who works varying hours per week by dividing the weekly wage by the total number of hours that the employee worked in a given week rather than by forty." *Smith v. Frac Tech Servs., LLC*, 4:09CV00679, 2011 WL 96868, at *34 (E.D. Ark. Jan. 11, 2011) (citing *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 666 (7th Cir. 2010)). "This calculation assumes that the salary is intended to compensate the employee for all of the hours worked rather than merely for forty hours." *Id.*

provided sufficient evidence on the second and third executive exemption elements,[2] it had not done so in regard to the fourth element; that is, it had not provided evidence sufficient for a jury to find that the plaintiffs had the authority to hire and fire employees or that the plaintiffs' suggestions and recommendations as to hiring, firing, advancement, promotion, or other status changes of other employees were given particular weight. The Court denied the motion for judgment as a matter of law on the issues of willfulness and damages, and it ordered a new trial to be held with respect to damages because a dispute existed as to which weeks each of the plaintiffs worked more than forty hours. The parties eventually stipulated for the Court to act as the finder of fact with respect to damages, with its findings based on the record developed at the original trial.

On March 5, 2013, the Court entered Findings of Fact and Conclusions of Law on the issue of damages. The Court first found that the plaintiffs had all worked forty-five hours per week Monday through Friday, and that they had worked alternate Saturdays starting approximately two weeks to a month before the opening of the Mayflower store. Next, the Court found by a preponderance of the evidence that the plaintiffs' salaries were intended to cover all of the hours they worked, so the fluctuating workweek method applied to their damages claims. The Court then determined that liquidated damages were appropriate because Lumber One did not, and indeed could not, reasonably conclude that the plaintiffs qualified under the executive exemption. Finally, the Court held that Lumber One owed $7,555.20 to Terry Madden, $1,234.80 to Rebecca O'Bar, and $2,339.20 to Doug Wortman, and it entered judgment in favor of the plaintiffs in these amounts, which totaled $11,129.20. Ten days later, the plaintiffs filed the present motion.[3]

---

[2] The first element was conceded by the plaintiffs.

[3] A party must move for attorneys' fees no later than 14 days after the entry of judgment. Fed. R. Civ. P. 54(d)(2)(B)(i).

## II.

Under the Fair Labor Standards Act, the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." *Hammond v. Northland Counseling Ctr., Inc.*, 218 F.3d 886, 894 (8th Cir. 2000) (quoting 29 U.S.C. § 216(b)). The starting point in analyzing a request for attorneys' fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by reasonable hourly rates. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983); *see also Quigley v. Winter*, 598 F.3d 938, 957 (8th Cir. 2010) (failure to use lodestar approach is abuse of discretion).[4] In determining this amount, the Court may consider:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n.3, 103 S. Ct. at 1937 n.3 (citation omitted). The Court should exclude hours not reasonably expended. *Id.* at 434, 103 S. Ct. at 1939. This is because:

> Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.

---

[4] "While *Hensley* involved an award of attorney fees under 42 U.S.C. § 1988, the *Hensley* Court made clear '[t]he standards set forth in [the] opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Quigley*, 598 F.3d at 957 n. 6 (quoting *Hensley*, 461 U.S. at 433 n. 7, 103 S. Ct. at 1939 n.7).

*Id.* at 1939-40. After the lodestar calculation, other considerations, including the results obtained, may make it appropriate to adjust the fee upward or downward. *Id.* at 1940. There is no precise rule or formula for making any of these determinations. *Id.* at 436, 103 S. Ct. at 1941.

**III.**

The plaintiffs ultimately prevailed in this action and are therefore entitled to an award of reasonable attorneys' fees and costs. *See* 29 U.S.C. § 216(b). They seek $104,936.57, which is a combination of $103,751.75 in attorneys' fees and $1184.82 in costs.

**A.     ATTORNEYS' FEES**

In the brief supporting their motion, the plaintiffs assert that they are seeking payment for 517.42 hours of legal work, which represents 67.12 hours reported by attorney John Holleman, 192.93 hours reported by attorney Maryna Jackson, 120.2 hours reported by "Other Holleman Associates,"[5] and 48.7 hours reported by paralegals and staff. The plaintiffs assert that they reached the total of $103,751.75 by billing Holleman out at the reasonable rate of $275 per hour, Jackson at $225 per hour, the other associates at $175 to $225 per hour, and the paralegals and staff at $75 to $100 per hour. All of these hours and rates, the plaintiffs assert, average out to a "blended" rate of $200.52 per hour. Finally, the plaintiffs assert that their hours calculation purposefully excluded hours worked on the aforementioned motions for class certification and summary judgment because these hours were excessive, redundant, or otherwise unnecessary.

In support of these assertions, the plaintiffs provide a chart based on contemporaneous time and billing records, along with an affidavit from Holleman. The chart and brief leave some areas of

---

[5] The brief later identifies these "other" attorneys as Amber Schubert, Steve Rauls, and Stephanie Lineham. *See* Document #95, at 9. The name "Stephanie Lineham" appears to be a misspelling of Stephanie Linam, *see* Document #95-1, at 40, which the Court will use from here on out.

confusion. First, the specific and individualized hours described in the brief and listed above do not actually combine to equal 517.42 hours; rather, they tally up to 428.95 hours. *See* Document #95, at 8 (67.12 (Holleman) + 192.93 (Jackson) + 120.2 (Other) + 48.7 (Paralegals) = 428.95 (Total)). What appears to have happened is that the hours worked by "Atty R" (31.2) and "Para-Legal J" (57.27), while included in the chart, *see* Document #95-1, at 38, were omitted from the individual breakdown included in the brief. Because these hours are included in the brief's summary of total hours worked, and because the hourly rate tied to these hours is included in the plaintiffs' overall fee request, the Court will assume that this omission from the plaintiffs' brief was unintentional and that they still seek attorneys' fees for the hours worked by Atty R and Paralegal J.

This segues to the second difficulty, which is identifying Atty R and various other persons involved. The chart, while containing relatively detailed descriptions of the hours worked, initially only identifies the persons performing the work as Atty H, Atty L, Atty J, Atty R, Paralegal J, and Legal Assistants. Holleman's affidavit provides no further guidance as to these persons' identities. Cross-referencing the plaintiffs' brief with the chart, it is apparent that Atty H is John Holleman, who worked 67.12 hours and requests $275 per hour. It is also apparent that Atty J is Maryna Jackson, who worked 192.93 hours and requests $225 per hour.[6] After that, it gets a bit more murky.

The Atty L column in the chart is first described as "Other Holleman Associates" in the plaintiffs' brief and later as Amber Schubert, Steve Rauls, and Stephanie Linam. Lumber One contends that all hours for Atty L should be dismissed because they are attributable to Linam, who has not entered an appearance, was not present at trial, and has done little or no work on the case.

---

[6] The chart eventually confirms this, stating on page 23 that "[r]egular time in the column Atty J belongs to Maryna Jackson; bold time belongs to Steve Rauls." Document #95-1, at 23 (bold font omitted). A perusal of the entire Atty J column reveals no bold time at all.

The chart, however, eventually states that "[r]egular time in the column Atty L belongs to Amber Schubert; bold time belongs to Michael Muskheli." *Id*. at 25 (bold font omitted). The Court will presume that the chart is correct, and that Atty L hours are not attributable to Linam.[7] The chart reports 117.4 hours of regular time, belonging to Schubert, and 2.8 hours of bolded time, belonging to Muskheli. The plaintiffs request $225 per hour for Schubert and Muskheli's time. *See id*. at 39.

Atty R was not mentioned in the brief and is not named in the chart. Apparently, Atty R is Steve Rauls, as Rauls is mentioned in both the brief and the chart but has no hours attributed to him unless he is Atty R.[8] The plaintiffs request $175 per hour for 31.2 hours of work performed by Rauls, or Atty R. *See id*. at 38-39.

Next is Paralegal J, whom the chart eventually indicates is actually three different persons. *See id*. at 7 (starting November 7, 2011, "[r]egular time in the column Paralegal J belongs to Jeanette, bold time belongs to Rachelle" (bold font omitted)); *id.* at 35 (starting June 15, 2012, "[a]ll regular time under Paralegal J belongs to Jeannette. All BOLD time belongs to Courtney" (bold font omitted)). According to the chart, Jeanette worked 43.02 hours on the case, Rachelle worked 14 hours, and Courtney worked .25 hours, all of which are billed at $100 per hour. *See id*. at 38-39. Finally, unnamed "Legal Assistants" worked 48.7 hours on the case, for which the plaintiffs are requesting $75 per hour. *See id.*

---

[7] This conclusion is buttressed by the fact that Linam's work is discussed in a different part of the chart, in the context of costs, which indicates that she was a contract laborer. *See id.* at 40.

[8] As discussed in Footnote 6, the chart states that Rauls was included under the Atty J designation, although no hours were actually assigned to him under that designation.

7

The following table summarizes what the Court believes to be the plaintiffs' fee request:

| PERSON | HOURS | PER HOUR REQUEST | AMOUNT |
|---|---|---|---|
| John Holleman (Atty H) | 67.12 | $275 | $ 18,458.00 |
| Maryna Jackson (Atty J) | 192.93 | $225 | $ 43,409.25 |
| Amber Schubert (Atty L) | 117.40 | $225 | $ 26,415.00 |
| Michael Muskheli (Atty L) | 2.80 | $225 | $ 630.00 |
| Steve Rauls (Atty R) | 31.20 | $175 | $ 5,460.00 |
| Jeanette (Paralegal J) | 43.02 | $100 | $ 4,302.00 |
| Rachelle (Paralegal J) | 14.00 | $100 | $ 1,400.00 |
| Courtney (Paralegal J) | .25 | $100 | $ 25.00 |
| Legal Assistants | 48.70 | $ 75 | $ 3,652.50 |
| **TOTAL** | 517.42 | $200.52 (blended rate)[9] | $103,751.75 |

Lumber One concedes the reasonableness of the proposed hourly rates. Based on this concession, the Court will assume that the hourly rates listed above are reasonable.

While conceding the reasonableness of the hourly rates, Lumber One contends that billing for the work of legal assistants is improper here and that the number of hours expended by the plaintiffs' attorneys was unreasonable and does not reflect the realities or scope of the case. Those arguments have merit.

First, the time attributed to legal assistants here was primarily clerical in nature—creating file folders, filing documents in those folders, preparing and updating the pleadings index, making copies, and the like. *See*, *e.g.*, *id.* at 2. No fees will be awarded for this time. "Secretaries' salaries come within a firm's overhead. Secretarial work on a case should not be billed to a client, nor to an

---

[9] The blended rate is calculated by dividing the total fee request by the number of hours for which compensation is requested. It is rounded to the nearest cent.

8

opposing party in a fee shifting case." *Gilster v. Primebank*, 884 F. Supp. 2d 811, 872 (N.D. Iowa 2012). When the time reported by legal assistants is excluded, the hours reported total 468.72, and the fee request totals $100,099.25.

Considering all of the *Hensley* factors, a fee award in the range of $100,000 is not justified in this case. This action was neither novel nor complex, and it did not require an unusually high level of skill. The plaintiffs themselves admitted as much in their opening statement to the jury, explaining, "This is a simple case about working class people who were denied overtime pay by their former employer." Document #77, at 31. Indeed, as this quote indicates, this was a routine wage-and-hour dispute involving the misclassification of three employees, and nothing more. No depositions were taken; only five witnesses, including the three plaintiffs, testified; the trial took less than two days; and the amount recovered by the plaintiffs combined was $11,129.20. The case did not preclude other employment by the attorneys, and there were no unusual time constraints. Nor was there anything undesirable about the subject matter. This is not the recipe for a case that would require five attorneys, three paralegals, and nearly 500 hours of work, producing a fee exceeding $100,000. *See Quigley*, 598 F.3d at 958 ("[T]he preparation of Quigley's case involved 437.7 hours of work performed by six attorneys and two paralegals . . . . Although we do not question the ethics or abilities of these attorneys, in our view, the complexity of the issues in this case simply did not warrant the requested amount of 'lawyering.'"); *Manula v. Wheat*, 4:06CV01107, 2007 WL 3232081, at *2 (E.D. Ark. Oct. 31, 2007) ("In view of the paucity of depositions, the brevity of the trial, and the amount of the judgment, the total of 270 hours seems excessive.").[10]

---

[10] It is highly inefficient for so many lawyers and paralegals to work on a simple, straightforward case such as this one, which could explain, at least in part, the excessive number of hours. *Cf. Quigley*, 598 F.3d at 958 ("We . . . conclude there was a significant amount of duplicative work, in part caused by transitions in the attorneys of record.").

9

The Court has concluded that the number of hours reasonably expended in this action by the plaintiffs' lawyers and paralegals is one-half of the reported 468.72 hours, which comes to 234.36 hours.[11] Because Lumber One has conceded the reasonableness of the hourly rates, the Court will adopt the blended hourly rate, excluding the legal assistants, which rounds to $213.56.[12] Multiplying the hours reasonably expended (234.36) by the hourly rate of $213.56 yields a lodestar amount of $50,049.92. *Cf. Quigley*, 598 F.3d at 958 ("[I]t is reasonable and appropriate to reduce the hours expended by each of the attorneys and paralegals by one-third, while leaving their hourly rates undisturbed.").[13]

Having calculated the lodestar, the Court must now analyze whether other considerations, including the results obtained by the plaintiffs and their level of success, make it appropriate to adjust the total upward or downward. *Hensley*, 461 U.S. at 434, 103 S. Ct. at 1940.

Lumber One's main contention is that the plaintiffs indicated during the course of litigation that their lost wages were somewhere between $17,000 and $37,000, whereas the Court ultimately only found $5,564.60 in actual lost wages (which was doubled to $11,129.20 because of liquidated damages). This level of success, Lumber One argues, was "marginal compared to the requested

---

[11] This is still a lot of time for a case with no depositions, five witnesses, and two days of trial. It is justified, however, by the extensive motion practice in this case, as in many FLSA cases.

[12] This blended hourly rate is calculated by dividing the total fees requested for lawyers and paralegals ($100,099.25) by the hours reported by lawyers and paralegals (468.72).

[13] This action could have been handled by one young attorney with some supervision by a more experienced attorney. The attorney primarily responsible for this action was Jackson, who was admitted to the bar in 2009. She reported 192.93 hours. Those hours multiplied by her hourly rate would yield a fee of $43,409.25. Because she would need some supervision from Holleman and some assistance from a paralegal, an alternative lodestar figure could be calculated using Jackson's time multiplied by her hourly rate plus some reasonable amount for Holleman's supervision and a paralegal's assistance, and the result would be near the above lodestar amount calculated by reducing the total request by fifty percent.

relief." Furthermore, Lumber One asserts, this discrepancy is attributable to the plaintiffs' exaggeration and insistence on pursuing a baseless and previously rejected approach to damages.

In general, Lumber One is correct that the relatively small recovery obtained here should factor into the attorneys' fees determination, and it was considered in the lodestar calculation, as were all of the *Hensley* factors. The Court is not persuaded, however, that the results obtained should cause a further reduction, after the lodestar calculation. A fee award need not always be proportional to a damages award. *See Simpson v. Merchs. & Planters Bank*, 441 F.3d 572, 580-81 (8th Cir. 2006).[14] And, while $11,129.20 in overall damages is certainly a smaller amount than what was sought, it is by no means nominal or irrelevant. *See Cutter v. Lincoln Nat. Life Ins. Co.*, 794 F.2d 352, 358 (8th Cir. 1986) (R. Arnold, J., dissenting) ("A verdict for $5,000 is clearly not 'nominal . . . .'").[15] Here, the plaintiffs prevailed on liability, and they recovered actual and liquidated damages as a result. The lodestar amount calculated by the Court is approximately 4.5 times the total amount of damages awarded, which does not merit a further pro rata reduction.

Moreover, Lumber One's assertion that the plaintiffs' approach to damages was baseless is without merit. While it is true that the Court's use of the fluctuating workweek method was settled, the Court denied Lumber One's motion for partial summary judgment on this point because a fact issue existed as to whether the plaintiffs' salaries were intended to cover all of the hours they worked,

---

[14] In *Simpson*, the Eighth Circuit noted that it had only "imposed a pro rata reduction in one extreme instance, where the attorney had unreasonably run up $488,960.25 in fees in comparison to $20,832 in compensatory damages requested in closing arguments." *Id.* at 581 (referring to *Gumbhir v. Curators of Univ. of Mo.*, 157 F.3d 1141, 1146-47 (8th Cir. 1998)).

[15] The majority in *Cutter* did not decide that $5,000 was nominal; rather, they declined to reach the issue. *Id.* at 357.

or just forty hours. Had the evidence at trial indicated the latter, the fluctuating workweek method would not have applied, and the plaintiffs would have recovered more in damages.

In addition, one factor that the Court must consider, and has considered, is whether the fee was fixed or contingent. Holleman states in his affidavit, "I agreed to represent plaintiffs with no promise of payment because the fee-shifting provisions in the Fair Labor Standards Act assures some fee and cost recovery if the plaintiffs prevail." Document #95-2, at 2. Thus, Holleman took a risk that his firm could "ultimately receive nothing." *Id*. Though the fee award is 4.5 times greater than the recovery, in an FLSA case such as this one, such an award is appropriate in view of the risk of nonpayment and the public policy encouraging employees to enforce their rights under the FLSA. *See Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 n.16, 101 S. Ct. 1437, 1444 n.16, 67 L. Ed. 2d 641 (1981).

Lumber One makes one final argument for a reduction, which is that the plaintiffs took an unreasonable and frustrating approach to settlement, thus extending the litigation longer than it need to be and accumulating more hours than necessary. This argument, however, is based almost entirely on Lumber One's assertion that the plaintiffs were grossly overvaluing their potential recovery because of a baseless view of damages. As the Court has explained, while not ultimately successful, the plaintiffs did present a fact issue in regard to damages that survived summary judgment and had to be decided based on the evidence produced at trial. The award will not be reduced further. *See Simpson*, 441 F.3d at 580-81; *Emery v. Hunt*, 272 F.3d 1042, 1047 (8th Cir. 2001) ("[T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." (quoting *Hensley*, 461 U.S. at 435, 103 S. Ct. at 1940)).[16]

---

[16] Lumber One did not make an offer of judgment pursuant to Fed. R. Civ. P. 68. Had it done so and the plaintiffs recovered less than the amount offered, the plaintiffs still would have been

In summary, the Court has concluded that a reasonable attorneys' fee award for the plaintiffs is $50,049.92, which is one-half of their original request, excluding the request for work performed by legal assistants.

**B.     COSTS**

The plaintiffs request $1,184.82 in costs. Included in the request for costs are $350 for a filing fee, $200 for processing server fees, $17.62 for postage charges, $79.20 for copy charges, and $538 for miscellaneous expenses. Document #95-1, at 39. The miscellaneous expenses can be further divided into $500 for contract labor done by Linam and $38 for unspecified mileage. *Id.* at 40. In response, Lumber One only objects to the $538 of miscellaneous expenses.

Lumber One first argues that contract labor for legal services is not a Rule 54 cost, but rather is covered under the rule's provision for attorneys' fees. The plaintiffs concede this characterization, so the Court will consider the $500 for Linam's work as an attorney's fee, rather than a cost. The plaintiffs offer no explanation for what Linam did or why she was employed to do it, so the Court cannot find that the request is reasonable. *Cf. Miller v. Woodharbor Molding & Millworks, Inc.*, 174 F.3d 948, 950 (8th Cir. 1999) (requiring a "detailed billing" before an award of attorneys' fees is granted).

Lumber One also objects to the $38 on the ground of ambiguity. While travel costs are recoverable, *see Miller v. Alamo*, 983 F.2d 856, 862 (8th Cir. 1993), the entry simply states "mileage," and nothing more. *See* Document #95-1, at 40. The notation is lumped together with

---

entitled to a recovery of reasonable attorneys' fees for services rendered thereafter. *See Dalal v. Alliant Techsystems, Inc.*, 72 F.3d 137, at *5 (10th Cir. 1995); *Haworth v. State of Nev.*, 56 F.3d 1048, 1051-52 (9th Cir. 1995). But the Court could have considered the Rule 68 offer in determining whether the fee requested is reasonable. *See Haworth*, 56 F.3d at 1052; *Mogilevsky v. Bally Total Fitness Corp.*, 311 F. Supp. 2d 212, 220-21 (D. Mass. 2004).

13

Linam, which tends to indicate that the mileage is related to her work, but no explanation is given other than a comment in the reply brief that the travel was for a client meeting. No explanation is given as to when or where the meeting occurred, nor what the purpose of the meeting was. The "mileage" will not be awarded.

## CONCLUSION

For the reasons stated above, the plaintiffs' motion for attorneys' fees and costs is GRANTED IN PART and DENIED IN PART. Document # 95. The plaintiffs will be awarded $50,049.92 in attorneys' fees.[17] The plaintiffs will also be awarded $646.82 in costs. In total, the plaintiffs will be awarded $50,696.74.

IT IS SO ORDERED this 22nd day of May, 2013.

_____
J. LEON HOLMES
UNITED STATES DISTRICT COURT

---

[17] In the conclusion of their brief, the plaintiffs ask for leave to submit an additional fee request for the hours spent litigating this fee request. That request is denied. *See Emmenegger v. Bull Moose Tube Co.*, 33 F. Supp. 2d 1127, 1140-41 (E.D. Mo. 1998) ("Although the Court believes that the reasonable time spent preparing a motion for an attorney's fee award ordinarily should be included in calculating a reasonable fee, it will not grant such leave here. Plaintiffs should have been able to claim most, if not all, of time spent in preparing the fee petition in the original motion for attorney's fees itself. Inexplicably, they did not do so. To allow them now to seek an award of those additional fees would reward that failure and impose an unnecessary and unjustifiable burden on the Court.").